## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. JAMIE AKERS, <br><br> Plaintiff, <br><br> v. <br><br> 1. ASTRAZENECA PHARMACEUTICALS, LP, <br><br> Defendant. | Case No. CIV-23-1067-JD <br><br> **JURY TRIAL DEMANDED** <br> **ATTORNEY LIEN CLAIMED** |

## COMPLAINT

Plaintiff Jamie Akers ("Plaintiff" or "Ms. Akers"), in order to redress the injuries Defendant caused after terminating her because of her religious beliefs, brings this claim pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e, et seq. In support thereof, Plaintiff states as follows:

### PARTIES, VENUE, and JURISDICTION

1. Plaintiff is and was at all relevant times a resident of Oklahoma County, Oklahoma.

2. Plaintiff is and was at all relevant times a believer in Jesus Christ.

3. Plaintiff is a member of St. Monica Roman Catholic Church.

4. Defendant Astrazeneca Pharmaceuticals, LP ("Defendant" or "AZ") is a limited partnership organized under the laws of the State of Delaware. However, Defendant conducted business in and can be served in Oklahoma County, the unlawful employment practices complained of occurred in and around Oklahoma County, and Oklahoma County is the judicial district for the United States District Court for the Western District of Oklahoma.

5. The Court has federal question jurisdiction under 28 U.S.C. § 1331, and this court has supplemental jurisdiction over the state law claims.

6. This claim arose in the Western District of Oklahoma, where Plaintiff was wrongfully terminated by Defendant.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff exhausted her administrative remedies with the Equal Employment Opportunity Commission ("EEOC").

9. Defendant wrongfully terminated Plaintiff on or about April 29, 2022.

10. Plaintiff filed a Charge of Discrimination with the EEOC dated on or about September 6, 2022, which the EEOC receive and assigned Charge No. 531-2022-02147. *See* **Exhibit 1**, attached herewith.

11. The EEOC issued a Dismissal and Notice of Rights letter dated on or about August 28, 2023, less than 90 days ago. *See* **Exhibit 2**, attached herewith.

12. All conditions precedent to filing this action have occurred or have been performed.

## FACTS

13. Plaintiff worked for Defendant AZ for nearly 15 years until her wrongful termination on April 29, 2022.

14. At the time of her termination, AZ employed Plaintiff in sales.

15. In August of 2021, AZ began requiring its employees to submit to testing for COVID-19 infection on a weekly basis.

16. Plaintiff was tested weekly for the virus and submitted her test results to AZ from on or about August 27, 2021, until her unlawful termination on April 29, 2022.

17. In January of 2022, AZ announced what it described as a "100% COVID vaccination policy" for its United States division and that all employees would need to receive a COVID-19 mRNA vaccination for continued employment.

18. Employees that could not show proof of vaccination by March 31, 2022, would have their employment terminated with no severance pay.

19. However, this new policy had exceptions.

20. On February 10, 2022, AZ informed employees that they could apply for medical or religious exceptions to the vaccination policy.

21. If AZ approved the exemption request, the exempted employee could be tested for COVID-19 weekly in lieu of receiving the mRNA vaccination.

22. On February 15, 2022, AZ sent its employees an email with instructions on how to complete a "Religious Accommodation Request Form."

23. AZ set a deadline of February 28, 2022, to apply for the exemption.

24. Plaintiff submitted her application in a timely manner.

25. The application included a letter from Rev. Stephen V. Hamilton, the Pastor of St. Monica Catholic Church, who explained that Ms. Akers sought a religious accommodation, and that his letter explained how, under Catholic teachings, individual Catholics such as Ms. Akers would be morally and doctrinally compelled to decline vaccination, including but not limited to the follow explanation:

   a. Vaccination is not morally obligatory in principle, and so must be voluntary;

   b. There is a moral duty to refuse the use of medical products, including certain vaccines that are created using human cell lines derived from abortion;

   c. A person is morally required to obey his or her conscience;

    d.  A Catholic may judge it wrong to receive certain vaccines for a variety of reasons consistent with these teachings, and there is no authoritative Church teaching universally obliging Catholics to receive any vaccine.

    e.  A Catholic may refuse a vaccine based on the Church's teachings concerning therapeutic proportionality.  Therapeutic proportionality is an assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the integral good of the person, including *spiritual*, *psychological*, and *bodily* goods;

    f.  The judgment of therapeutic proportionality must be made by the person who is the potential recipient of the intervention, not by public health authorities or by other individuals who might judge differently in their own situations; and, in summary

    g.  Vaccination is not a universal [Catholic] obligation and a person must obey his or her conscience. Therefore, if a Catholic comes to an informed judgment that he or she should not receive a vaccine, then the Catholic Church requires that the person follow this judgment of conscience and refuse the vaccine.  The Catechism is clear: "Man has the right to act in conscience and in freedom so as personally to make moral decisions.  'He must not be forced to act contrary to his conscience.  Nor must he be prevented from acting according to his conscience, especially in religious matters.'"

26.    In her application for exemption and supporting pastor's letter, Ms. Akers described how her religious beliefs required accommodation, including her objections to using any

medications generated using aborted fetal cells, as well as her belief that taking the COVID vaccine would defile the sanctity of her body.

27. In her request for accommodation, Ms. Akers further explained that, after careful prayer, research, and examination, she could not in good conscience take the COVID vaccine and, therefore, the dictates of her faith required her to refuse vaccination.

28. On March 31, 2022, AZ rejected her accommodation request, stating that her request for accommodation was denied because, oddly, she was "not qualified for a reasonable accommodation." No explanation as to how AZ determined Plaintiff was not qualified was provided.

29. To the contrary, Plaintiff was and is a person whose religious beliefs require her to refuse vaccination, thereby rendering her duly qualified for a reasonable accommodation.

30. AZ improperly and incorrectly concluded that Ms. Akers' accommodation request was based on personal, and not religious, beliefs.

31. By telling Ms. Akers how to practice her own religion, AZ demonstrated its hostility and bias to persons of faith to theology with which it disagreed.

32. AZ also stated that it was rejecting her request because it would cause AZ "undue hardship" in that it could lead to "business disruption/increased costs resulting from illness-related absences."

33. This assertion is false; refusal to vaccinate would not cause AZ undue hardship where it permitted others to remain unvaccinated as well.

34. Notably, AZ could have accommodated Plaintiff through weekly testing.

35. Despite AZ's conclusion that granting Ms. Akers' accommodation request would cause it undue hardship, it approved a substantially similar accommodation request from a 33-

year-old employee who was eight years younger than Ms. Akers. The younger employee was permitted to be tested for COVID-19 every week rather than get vaccinated for it.

36. This demonstrates that a reasonable accommodation was possible and a motivating factor for not accommodating Ms. Akers was AZ's hostility to her sincerely held religious beliefs.

37. Upon information and belief, the other employee did not belong to the same church as Ms. Akers.

38. AZ's rejection additionally stated that the decision was "final and not subject to appeal" and that Ms. Akers' employment would be "terminated without severance" on April 29, 2022 if she chose not to get vaccinated.

39. As represented in AZ's correspondence rejecting Ms. Akers' accommodation request, she was terminated from her employment with no severance on April 29, 2022.

40. Plaintiff was 41 years old at the time of her termination.

41. At all points during her employment, Plaintiff was a highly qualified, high-performing employee and highly competent in executing her required duties.

42. Upon information and belief, Defendant replaced Plaintiff with a younger, less qualified employee.

43. Plaintiff has incurred substantial economic and non-economic harm and seeks damages in excess of $75,000, to be determined at trial.

## FIRST CAUSE OF ACTION

### Discrimination – Religion

44. Plaintiff reasserts the prior allegations of this Complaint as though set forth fully herein.

45. Plaintiff asserts a claim of religious discrimination under Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e, *et seq*. and Okla. Stat. tit. 25, § 1350.

46. Defendant, by its actions and failures to act, including but not limited to those described above, discriminated against Plaintiff because of her religious beliefs.

47. Plaintiff was treated less favorably than other similarly situated employees who did not share her faith.

48. Plaintiff's religious beliefs were a motivating factor in Defendant's decision to take all adverse actions against Plaintiff, including terminating Plaintiff's employment.

49. As a result of Defendant's discriminatory actions and failures to act as described herein, Plaintiff has suffered non-diagnosed emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

50. In addition, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs, and expenses of suit.

51. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and, as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

## SECOND CAUSE OF ACTION

### Negligent Hiring, Supervision, and Retention

52. Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

53. Plaintiff was entitled to a lawful and productive work environment. She was additionally entitled to have her accommodation request considered by persons who would not discriminate against her for making it.

54. When AZ employees, officers, and/or agents reviewed Plaintiff's accommodation request, they discriminated against her on the basis of her religion and rejected her accommodation request.

55. At the same time, AZ approved the substantively similar accommodation request from another employee who did not share Plaintiff's religion.

56. Defendant AZ encouraged this behavior and the violations of public policy and the law by allowing the persons who reviewed her accommodation request to remain employees of AZ.

57. Defendant AZ failed to properly supervise and improperly retained these individuals who reviewed Plaintiff's accommodation request after learning of their illegal, improper, and immoral behavior.

58. Under the doctrine of *respondeat superior*, Defendant AZ, as the employer of the persons who reviewed Plaintiff's accommodation request, is vicariously liable for the wrongful conduct of its employees, officers, agents, and managers.

59. As her employer, Defendant AZ has a duty to hire, employ, supervise, manage, and retain employees who are fit for those positions. AZ has a duty to see that managerial and supervisory employees properly exercise the authority and power entrusted to them in the workplace.

60. AZ breached these duties by failing to properly screen, train, and control their employees, officers, and/or agents. Those breaches include, but are not necessarily limited to, failing to develop, implement, and evaluate the effectiveness of proper policies and procedures to keep employees, officers, and/or agents from discriminating against Plaintiff and others on the

basis of religion and to ensure that managers and supervisors understand and comply with applicable laws.

61. By hiring and retaining the persons who reviewed Plaintiff's accommodation request after learning of their immoral, improper, and illegal behavior, AZ acted recklessly by exposing Plaintiff to them.

62. AZ's breach and negligence caused harm, severe physical injury, pain, suffering, and emotional distress to Plaintiff, and she is entitled to be compensated in an amount to be determined at trial.

63. AZ's breach of its supervisory duty was a direct and proximate cause of the injuries and loss suffered by Plaintiff, who is entitled to an award of punitive damages in an amount sufficient to punish and deter AZ and all others from engaging in this conduct.

64. As a direct and proximate result of AZ's negligent hiring, supervision, and retention, Plaintiff had to secure the services of attorneys to pursue this action, and she is entitled to recover her reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION

**Negligent Infliction of Emotional Distress**

65. Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

66. Defendant AZ owed Plaintiff a duty of care not to subject her or allow her to be subjected to unlawful discrimination in the performance of her employment responsibilities or in the reasonable requests that she made to her supervisors at AZ.

67. Defendant AZ knew or should have known that its employees, officers, and/or agents denying her reasonable accommodation request and threatening with termination if she did

not receive the COVID-19 vaccination were breaches of that duty to Plaintiff and were likely to result in mental, physical, and/or emotional injury to Plaintiff.

68. AZ permitting its employees, officers, and/or agents to deny Plaintiff's reasonable accommodation request and terminating her employment were breaches of the duty owed to Plaintiff and were likely to – and did – result in mental, physical, and/or emotional injury to Plaintiff.

69. As a direct and proximate result of Defendant AZ's negligent infliction of emotional distress, Plaintiff has suffered damages and is entitled to recover compensatory and other damages related thereto.

70. Under the doctrine of *respondeat superior*, AZ is liable for the discriminatory and retaliatory actions of its employees, officers, and/or agents.

71. As a result of this conduct, Plaintiff has suffered damages in an amount to be proven at trial.

72. As a direct and proximate result of Defendant's negligent infliction of emotional distress, Plaintiff had to secure the services of an attorney to pursue this action and is entitled to recover her reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress**

1. Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

2. Defendant AZ owed Plaintiff a duty of care not to subject her or allow her to be subjected to unlawful discrimination in the performance of her employment responsibilities or in the reasonable requests that she made to her supervisors at AZ.

3. Defendant AZ knew or should have known that its employees, officers, and/or agents denying her reasonable accommodation request and threatening with termination if she did not receive the COVID-19 vaccination were breaches of that duty to Plaintiff and were likely to result in mental, physical, and/or emotional injury to Plaintiff.

4. AZ permitting its employees, officers, and/or agents to deny Plaintiff's reasonable accommodation request and terminating her employment were breaches of the duty owed to Plaintiff and were likely to – and did – result in mental, physical, and/or emotional injury to Plaintiff.

5. As a direct and proximate result of Defendant AZ's intentional infliction of severe emotional distress, Plaintiff has suffered said distress and damages and is entitled to recover compensatory and other damages related thereto.

6. Defendant AZ's conduct was beyond all possible bounds of decency and/or utterly intolerable in a civilized community.

7. Defendant AZ acted either intentionally or recklessly in its conduct described herein.

8. Defendant AZ's conduct described herein was extreme and outrageous.

9. Under the doctrine of *respondeat superior*, AZ is liable for the discriminatory and retaliatory actions of its employees, officers, and/or agents.

10. As a result of this conduct, Plaintiff has suffered damages in an amount to be proven at trial.

11. As a direct and proximate result of Defendant's negligent infliction of emotional distress, Plaintiff had to secure the services of an attorney to pursue this action and is entitled to recover her reasonable attorneys' fees and costs.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury on all claims, defenses, and issues so triable.

## PRAYER FOR RELIEF – Applicable to All Counts

WHEREFORE, Plaintiff prays as follows:

A.   For a trial by jury on all issues;

B.   For damages allowable under Title VII and Okla. Stat. titl. 25, § 1350, including but not limited to back pay, front pay, lost benefits, interest on back pay, compensation for emotional distress, punitive damages, attorney's fees, and costs of suit, all as determined at trial;

C.   For all damages allowed or recoverable under Oklahoma law for the intentional torts, including compensatory, special, general, and consequential damages;

D.   For punitive damages in an amount sufficient to deter Defendant from engaging in such conduct in the future and as an example to other employers and elected officials not to engage in such conduct;

E.   For costs of this action, including reasonable attorneys' fees and costs;

F.   For a finding that Defendant AZ violated the Title VII and Okla. Stat. titl. 25, § 1350, and that such violation was willful;

G.   For prejudgment and post-judgment interest as allowable by law; and

H.   For such other and further relief as the Court shall deem just and proper.

Dated: November 21, 2023.

Respectfully Submitted,

/s/ *John C. Burns*
John C. Burns (pro hac vice forthcoming)
BURNS LAW FIRM
P.O. Box 191250
St. Louis, Missouri 63119
(314) 329-5040
john@burns-law-firm.com

/s/*Robert C. Newark, III*
Robert Newark, III
Attorney at Law
2575 Kelley Pointe Pkwy
Ste. 100
Edmond, OK 73013
  P:(866) 230-7236
  F:(888) 316-3398
  robert@newarkfirm.com
*Attorneys for Plaintiff Jamie Akers*