## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JAMIE AKERS,

                Plaintiff,

v.

ASTRAZENECA PHARMACEUTICALS, L.P.,

                Defendant.

Case No. CIV-23-1067-JD

---

## DEFENDANT'S ANSWER AND SEPARATE DEFENSES
## TO PLAINTIFF'S COMPLAINT

---

Defendant AstraZeneca Pharmaceuticals LP, by and through its undersigned attorneys, hereby file this Answer and Separate Defenses to Plaintiff's Complaint ("Complaint"). This Answer does not include responses to any headings or subheading. To the extent any of the headings or subheadings in the Complaint contain factual averments, AstraZeneca denies those allegations. Defendant denies and admits as follows:

### PARTIES, VENUE, AND JURISDICTION

1.      Plaintiff is and was at all relevant times a resident of Oklahoma County, Oklahoma.

**RESPONSE:** AstraZeneca admits Plaintiff's last known address was located in Oklahoma County, Oklahoma. AstraZeneca is without sufficient information to admit or deny whether Plaintiff resided in Oklahoma County, Oklahoma "at all relevant times" and therefore denies the allegation. AstraZeneca denies the remaining allegations in Paragraph 1.

2.      Plaintiff is and was at all relevant times a believer in Jesus Christ.

**RESPONSE:** AstraZeneca is without sufficient information to admit or deny the allegations contained in Paragraph 2, and therefore denies the allegations.

3.      Plaintiff is a member of St. Monica Roman Catholic Church.

**RESPONSE:** AstraZeneca is without sufficient information to admit or deny the allegations contained in Paragraph 3, and therefore denies the allegations.

4.      Defendant Astrazeneca Pharmaceuticals, LP ("Defendant" or "AZ") is a limited partnership organized under the laws of the State of Delaware. However, Defendant conducted business in and can be served in Oklahoma County, the unlawful employment practices complained of occurred in and around Oklahoma County, and Oklahoma County is the judicial district for the United States District Court for the Western District of Oklahoma.

**RESPONSE:** AstraZeneca admits it is a limited partnership organized under the laws of the State of Delaware. AstraZeneca further admits it conducts business in Oklahoma County, and for purposes of this Action, can be served in Oklahoma County. AstraZeneca further admits Plaintiff purports to bring claims he alleges occurred in and around Oklahoma County. AstraZeneca further admits Oklahoma County is the judicial district for the United States District Court for the Western District of Oklahoma. AstraZeneca denies the remaining allegations in Paragraph 4.

5.      The Court has federal question jurisdiction under 28 U.S.C. § 1331, and this court has supplemental jurisdiction over the state law claims.

**RESPONSE:** The allegations contained in Paragraph 5 relate to Counts II, III, and IV, which were dismissed, and therefore no responsive pleading is required. Dkt. 24. AstraZeneca admits this Court has jurisdiction over the remaining claims in this Action.

6.      This claim arose in the Western District of Oklahoma, where Plaintiff was wrongfully terminated by Defendant.

**RESPONSE:** AstraZeneca admits Plaintiff purports to bring claims in the Western District of Oklahoma. AstraZeneca denies the remaining allegations in Paragraph 6.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

**RESPONSE:** Admitted, for purposes of this Action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Plaintiff exhausted her administrative remedies with the Equal Employment Opportunity Commission ("EEOC").

**RESPONSE:** The allegations contained in Paragraph 8 consist of legal conclusions to which no responsive pleading is required. To the extent a response is deemed necessary, AstraZeneca denies the allegations in Paragraph 8.

9.      Defendant wrongfully terminated Plaintiff on or about April 29, 2022.

**RESPONSE:** AstraZeneca admits Plaintiff's last day of employment was April 29, 2022, but denies the remaining allegations in Paragraph 9.

10.    Plaintiff filed a Charge of Discrimination with the EEOC dated on or about September 6, 2022, which the EEOC receive and assigned Charge No. 531-2022-02147. *See* Doc. 1-1 (Plaintiff's Exhibit 1, attached to her Complaint).

**RESPONSE:**  The allegations in Paragraph 10 purport to characterize a written document that speak for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 10.

11.    The EEOC issued a Dismissal and Notice of Rights letter dated on or about August 28, 2023, less than 90 days ago. *See* Doc. 1-2 (Plaintiff's Exhibit 2, attached to her Complaint).

**RESPONSE:**  The allegations in Paragraph 11 purport to characterize a written document that speak for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 11.

12.    All conditions precedent to filing this action have occurred or have been performed.

**RESPONSE:**  The allegations contained in Paragraph 12 consist of legal conclusions to which no responsive pleading is required.  To the extent a response is deemed necessary, AstraZeneca denies the allegations in Paragraph 12.

### FACTS

13.    Plaintiff worked for Defendant AZ for nearly 15 years until her wrongful termination on April 29, 2022.

**RESPONSE:**  AstraZeneca admits Plaintiff began working for AstraZeneca in February 2007 and her last day of employment was April 29, 2022.  AstraZeneca denies the remaining allegations in Paragraph 13.

14.    At the time of her termination, AZ employed Plaintiff in sales.

**RESPONSE:**  AstraZeneca admits Plaintiff's title was Senior Biologics Sales Specialist. AstraZeneca denies the remaining allegations in Paragraph 14.

15.    In August of 2021, AZ began requiring its employees to submit to testing for COVID-19 infection on a weekly basis.

**RESPONSE:**  Denied.

16.    Plaintiff was tested weekly for the virus and submitted her test results to AZ from on or about August 27, 2021, until her unlawful termination on April 29, 2022.

**RESPONSE:**  Denied.

4873-0918-1415, v. 11

17.    In January of 2022, AZ announced what it described as a "100% COVID vaccination policy" for its United States division and that all employees would need to receive a COVID-19 mRNA vaccination for continued employment.

**RESPONSE:**  AstraZeneca admits that in January 2022, it made announcements related to its COVID-19 vaccination mandate for U.S. employees.  The remaining allegations in Paragraph 17 purport to characterize written documents that speaks for themselves, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written documents.  AstraZeneca denies the remaining allegations in Paragraph 17.

18.    Employees that could not show proof of vaccination by March 31, 2022, would have their employment terminated with no severance pay.

**RESPONSE:**  Denied.

19.    However, this new policy had exceptions.

**RESPONSE:**  The allegations in Paragraph 19 purport to characterize a written document that speaks for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 19.

20.    On February 10, 2022, AZ informed employees that they could apply for medical or religious exceptions to the vaccination policy.

**RESPONSE:**  The allegations in Paragraph 20 purport to characterize a written document that speaks for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 20.

21.    If AZ approved the exemption request, the exempted employee could be tested for COVID-19 weekly in lieu of receiving the mRNA vaccination.

**RESPONSE:**  The allegations in Paragraph 21 purport to characterize a written document that speaks for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 21.

22.    On February 15, 2022, AZ sent its employees an email with instructions on how to complete a "Religious Accommodation Request Form."

**RESPONSE:**  The allegations in Paragraph 22 purport to characterize a written document that speaks for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 22.

23.    AZ set a deadline of February 28, 2022, to apply for the exemption.

**RESPONSE:**  AstraZeneca admits that its deadline for employees to submit a request for an accommodation or exemption from the COVID-19 vaccine mandate was February 28, 2022. AstraZeneca denies the remaining allegations in Paragraph 23.

24.     Plaintiff submitted her application in a timely manner.

**RESPONSE:**  AstraZeneca admits Plaintiff submitted an accommodation request to be exempted from AstraZeneca's COVID-19 vaccination mandate on or around February 26, 2022. AstraZeneca denies the remaining allegations in Paragraph 24.

25.     The application included a letter from Rev. Stephen V. Hamilton, the Pastor of St. Monica Catholic Church, who explained that Ms. Akers sought a religious accommodation, and that his letter explained how, under Catholic teachings, individual Catholics such as Ms. Akers would be morally and doctrinally compelled to decline vaccination, including but not limited to the follow explanation:

    a.  Vaccination is not morally obligatory in principle, and so must be voluntary;

    b.  There is a moral duty to refuse the use of medical products, including certain vaccines that are created using human cell lines derived from abortion;

    c.  A person is morally required to obey his or her conscience;

    d.  A Catholic may judge it wrong to receive certain vaccines for a variety of reasons consistent with these teachings, and there is no authoritative Church teaching universally obliging Catholics to receive any vaccine.

    e.  A Catholic may refuse a vaccine based on the Church's teachings concerning therapeutic proportionality. Therapeutic proportionality is an assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the integral good of the person, including *spiritual, psychological, and bodily* goods;

    f.  The judgment of therapeutic proportionality must be made by the person who is the potential recipient of the intervention, not by public health authorities or by other individuals who might judge differently in their own situations; and, in summary

    g.  Vaccination is not a universal [Catholic] obligation and a person must obey his or her conscience. Therefore, if a Catholic comes to an informed judgment that he or she should not receive a vaccine, then the Catholic Church requires that the person follow this judgment of conscience and refuse the vaccine. The Catechism is clear: "Man has the right to act in conscience and in freedom so as personally to make moral decisions. 'He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters.'"

5

**RESPONSE:** The allegations in Paragraph 25, including subparts (a)-(g), purport to characterize a written document that speaks for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document. AstraZeneca denies the remaining allegations in Paragraph 25.

26.     In her application for exemption and supporting pastor's letter, Ms. Akers described how her religious beliefs required accommodation, including her objections to using any medications generated using aborted fetal cells, as well as her belief that taking the COVID vaccine would defile the sanctity of her body.

**RESPONSE:**  The allegations in Paragraph 26 purport to characterize a written document that speaks for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 26.

27.     In her request for accommodation, Ms. Akers further explained that, after careful prayer, research, and examination, she could not in good conscience take the COVID vaccine and, therefore, the dictates of her faith required her to refuse vaccination.

**RESPONSE:**  The allegations in Paragraph 27 purport to characterize a written document that speaks for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 27.

28.     On March 31, 2022, AZ rejected her accommodation request, stating that her request for accommodation was denied because, oddly, she was "not qualified for a reasonable accommodation." No explanation as to how AZ determined Plaintiff was not qualified was provided.

**RESPONSE:**  AstraZeneca admits it determined Plaintiff was not qualified for an accommodation to its COVID-19 vaccination mandate and denied Plaintiff's request for an exemption on or around March 31, 2022.  The remaining allegations in Paragraph 28 purport to characterize written documents that speak for themselves, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written documents. AstraZeneca denies the remaining allegations in Paragraph 28.

29.     To the contrary, Plaintiff was and is a person whose religious beliefs require her to refuse vaccination, thereby rendering her duly qualified for a reasonable accommodation.

**RESPONSE:**  Denied.

30.     AZ improperly and incorrectly concluded that Ms. Akers' accommodation request was based on personal, and not religious, beliefs.

**RESPONSE:**  Denied.

31.     By telling Ms. Akers how to practice her own religion, AZ demonstrated its hostility and bias to persons of faith to theology with which it disagreed.

**RESPONSE:**  Denied.

32.     AZ also stated that it was rejecting her request because it would cause AZ "undue hardship" in that it could lead to "business disruption/increased costs resulting from illness-related absences."

**RESPONSE:**  The allegations in Paragraph 32 purport to characterize a written document that speaks for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 32.

33.     This assertion is false; refusal to vaccinate would not cause AZ undue hardship where it permitted others to remain unvaccinated as well.

**RESPONSE:**  Denied.

34.     Notably, AZ could have accommodated Plaintiff through weekly testing.

**RESPONSE:**  Denied.

35.     Despite AZ's conclusion that granting Ms. Akers' accommodation request would cause it undue hardship, it approved a substantially similar accommodation request from a 33-year-old employee who was eight years younger than Ms. Akers. The younger employee was permitted to be tested for COVID-19 every week rather than get vaccinated for it.

**RESPONSE:**  Denied.

36.     This demonstrates that a reasonable accommodation was possible and a motivating factor for not accommodating Ms. Akers was AZ's hostility to her sincerely held religious beliefs.

**RESPONSE:**  Denied.

37.     Upon information and belief, the other employee did not belong to the same church as Ms. Akers.

**RESPONSE:**  AstraZeneca is without sufficient information to admit or deny the allegations contained in Paragraph 37, and therefore denies the allegations.

38.     AZ's rejection additionally stated that the decision was "final and not subject to appeal" and that Ms. Akers' employment would be "terminated without severance" on April 29, 2022 if she chose not to get vaccinated.

**RESPONSE:**  AstraZeneca admits that after denying Plaintiff's request for an accommodation, it provided Plaintiff additional time to get vaccinated and informed her that should she choose to not get vaccinated, AstraZeneca would terminate her employment on April 29, 2022.  The remaining allegations in Paragraph 38 purport to characterize a written document that speak for itself, and AstraZeneca denies those allegations to the extent they mischaracterize

4873-0918-1415, v. 11

and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 38.

39.    As represented in AZ's correspondence rejecting Ms. Akers' accommodation request, she was terminated from her employment with no severance on April 29, 2022.

**RESPONSE:** AstraZeneca admits that Plaintiff chose to not get vaccinated, and AstraZeneca terminated her employment on April 29, 2022.  The remaining allegations in Paragraph 39 purport to characterize a written document that speak for itself, and AstraZeneca denies those allegations to the extent they mischaracterize and do not fully represent the written document.  AstraZeneca denies the remaining allegations in Paragraph 39.

40.    Plaintiff was 41 years old at the time of her termination.

**RESPONSE:** Admitted.

41.    At all points during her employment, Plaintiff was a highly qualified, high-performing employee and highly competent in executing her required duties.

**RESPONSE:** AstraZeneca admits that Plaintiff met her performance expectations and denies the remaining allegations in Paragraph 41.

42.    Upon information and belief, Defendant replaced Plaintiff with a younger, less qualified employee.

**RESPONSE:** Denied.

43.    Plaintiff has incurred substantial economic and non-economic harm and seeks damages in excess of $75,000, to be determined at trial.

**RESPONSE:** AstraZeneca admits Plaintiff purports to bring claims seeking damages and denies the remaining allegations in Paragraph 43.

## FIRST CAUSE OF ACTION

### Discrimination – Religion

44.    Plaintiff reasserts the prior allegations of this Complaint as though set forth fully herein.

**RESPONSE:** AstraZeneca incorporates by reference its responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

45.    Plaintiff asserts a claim of religious discrimination under Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e, et seq. and Okla. Stat. tit. 25, § 1350.

**RESPONSE:** AstraZeneca admits Plaintiff purports to assert claims of religious discrimination under Title VII and Oklahoma state law, but denies the remaining allegations in Paragraph 45.

4873-0918-1415, v. 11

46.     Defendant, by its actions and failures to act, including but not limited to those described above, discriminated against Plaintiff because of her religious beliefs.

**RESPONSE:**  Denied.

47.     Plaintiff was treated less favorably than other similarly situated employees who did not share her faith.

**RESPONSE:**  Denied.

48.     Plaintiff's religious beliefs were a motivating factor in Defendant's decision to take all adverse actions against Plaintiff, including terminating Plaintiff's employment.

**RESPONSE:**  Denied.

49.     As a result of Defendant's discriminatory actions and failures to act as described herein, Plaintiff has suffered non-diagnosed emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

**RESPONSE:**  Denied.

50.     In addition, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs, and expenses of suit.

**RESPONSE:**  Denied

51.     Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and, as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

**RESPONSE:**  Denied.

## SECOND CAUSE OF ACTION

### Negligent Hiring, Supervision, and Retention

52.     Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

**RESPONSE:**  The allegations contained in Paragraph 52 relate to Count II, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

53.     Plaintiff was entitled to a lawful and productive work environment. She was additionally entitled to have her accommodation request considered by persons who would not discriminate against her for making it.

**RESPONSE:**  The allegations contained in Paragraph 53 relate to Count II, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

54.     When AZ employees, officers, and/or agents reviewed Plaintiff's accommodation request, they discriminated against her on the basis of her religion and rejected her accommodation request.

**RESPONSE:**  The allegations contained in Paragraph 54 relate to Count II, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

55.     At the same time, AZ approved the substantively similar accommodation request from another employee who did not share Plaintiff's religion.

**RESPONSE:**  The allegations contained in Paragraph 55 relate to Count II, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

56.     Defendant AZ encouraged this behavior and the violations of public policy and the law by allowing the persons who reviewed her accommodation request to remain employees of AZ.

**RESPONSE:**  The allegations contained in Paragraph 56 relate to Count II, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

57.     Defendant AZ failed to properly supervise and improperly retained these individuals who reviewed Plaintiff's accommodation request after learning of their illegal, improper, and immoral behavior.

**RESPONSE:**  The allegations contained in Paragraph 57 relate to Count II, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

58.     Under the doctrine of *respondeat superior*, Defendant AZ, as the employer of the persons who reviewed Plaintiff's accommodation request, is vicariously liable for the wrongful conduct of its employees, officers, agents, and managers.

**RESPONSE:**  The allegations contained in Paragraph 58 relate to Count II, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

59.     As her employer, Defendant AZ has a duty to hire, employ, supervise, manage, and retain employees who are fit for those positions. AZ has a duty to see that managerial and supervisory employees properly exercise the authority and power entrusted to them in the workplace.

**RESPONSE:**  The allegations contained in Paragraph 59 relate to Count II, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

60.     AZ breached these duties by failing to properly screen, train, and control their employees, officers, and/or agents. Those breaches include, but are not necessarily limited to, failing to develop, implement, and evaluate the effectiveness of proper policies and procedures to keep employees, officers, and/or agents from discriminating against Plaintiff and others on the basis of religion and to ensure that managers and supervisors understand and comply with applicable laws.

4873-0918-1415, v. 11

**RESPONSE:** The allegations contained in Paragraph 60 relate to Count II, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

61.     By hiring and retaining the persons who reviewed Plaintiff's accommodation request after learning of their immoral, improper, and illegal behavior, AZ acted recklessly by exposing Plaintiff to them.

**RESPONSE:** The allegations contained in Paragraph 61 relate to Count II, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

62.     AZ's breach and negligence caused harm, severe physical injury, pain, suffering, and emotional distress to Plaintiff, and she is entitled to be compensated in an amount to be determined at trial.

**RESPONSE:** The allegations contained in Paragraph 62 relate to Count II, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

63.     AZ's breach of its supervisory duty was a direct and proximate cause of the injuries and loss suffered by Plaintiff, who is entitled to an award of punitive damages in an amount sufficient to punish and deter AZ and all others from engaging in this conduct.

**RESPONSE:** The allegations contained in Paragraph 63 relate to Count II, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

64.     As a direct and proximate result of AZ's negligent hiring, supervision, and retention, Plaintiff had to secure the services of attorneys to pursue this action, and she is entitled to recover her reasonable attorneys' fees and costs.

**RESPONSE:** The allegations contained in Paragraph 64 relate to Count II, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

### THIRD CAUSE OF ACTION

#### Negligent Infliction of Emotional Distress

65.     Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

**RESPONSE:** The allegations contained in Paragraph 65 relate to Count III, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

66.     Defendant AZ owed Plaintiff a duty of care not to subject her or allow her to be subjected to unlawful discrimination in the performance of her employment responsibilities or in the reasonable requests that she made to her supervisors at AZ.

**RESPONSE:** The allegations contained in Paragraph 66 relate to Count III, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

67.    Defendant AZ knew or should have known that its employees, officers, and/or agents denying her reasonable accommodation request and threatening with termination if she did not receive the COVID-19 vaccination were breaches of that duty to Plaintiff and were likely to result in mental, physical, and/or emotional injury to Plaintiff.

**RESPONSE:**  The allegations contained in Paragraph 67 relate to Count III, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

68.    AZ permitting its employees, officers, and/or agents to deny Plaintiff's reasonable accommodation request and terminating her employment were breaches of the duty owed to Plaintiff and were likely to – and did – result in mental, physical, and/or emotional injury to Plaintiff.

**RESPONSE:**  The allegations contained in Paragraph 68 relate to Count III, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

69.    As a direct and proximate result of Defendant AZ's negligent infliction of emotional distress, Plaintiff has suffered damages and is entitled to recover compensatory and other damages related thereto.

**RESPONSE:**  The allegations contained in Paragraph 69 relate to Count III, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

70.    Under the doctrine of *respondeat superior*, AZ is liable for the discriminatory and retaliatory actions of its employees, officers, and/or agents.

**RESPONSE:**  The allegations contained in Paragraph 70 relate to Count III, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

71.    As a result of this conduct, Plaintiff has suffered damages in an amount to be proven at trial.

**RESPONSE:**  The allegations contained in Paragraph 71 relate to Count III, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

72.    As a direct and proximate result of Defendant's negligent infliction of emotional distress, Plaintiff had to secure the services of an attorney to pursue this action and is entitled to recover her reasonable attorneys' fees and costs.

**RESPONSE:**  The allegations contained in Paragraph 72 relate to Count III, which was dismissed, and therefore no responsive pleading is required.  Dkt. 24.

## FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

73.    Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

**RESPONSE:** The allegations contained in Paragraph 73 relate to Count IV, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

74.    Defendant AZ owed Plaintiff a duty of care not to subject her or allow her to be subjected to unlawful discrimination in the performance of her employment responsibilities or in the reasonable requests that she made to her supervisors at AZ.

**RESPONSE:** The allegations contained in Paragraph 74 relate to Count IV, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

75.    Defendant AZ knew or should have known that its employees, officers, and/or agents denying her reasonable accommodation request and threatening with termination if she did not receive the COVID-19 vaccination were breaches of that duty to Plaintiff and were likely to result in mental, physical, and/or emotional injury to Plaintiff.

**RESPONSE:** The allegations contained in Paragraph 75 relate to Count IV, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

76.    AZ permitting its employees, officers, and/or agents to deny Plaintiff's reasonable accommodation request and terminating her employment were breaches of the duty owed to Plaintiff and were likely to – and did – result in mental, physical, and/or emotional injury to Plaintiff.

**RESPONSE:** The allegations contained in Paragraph 76 relate to Count IV, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

77.    As a direct and proximate result of Defendant AZ's intentional infliction of severe emotional distress, Plaintiff has suffered said distress and damages and is entitled to recover compensatory and other damages related thereto.

**RESPONSE:** The allegations contained in Paragraph 77 relate to Count IV, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

78.    Defendant AZ's conduct was beyond all possible bounds of decency and/or utterly intolerable in a civilized community.

**RESPONSE:** The allegations contained in Paragraph 78 relate to Count IV, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

79.    Defendant AZ acted either intentionally or recklessly in its conduct described herein.

**RESPONSE:** The allegations contained in Paragraph 79 relate to Count IV, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

80.    Defendant AZ's conduct described herein was extreme and outrageous.

**RESPONSE:** The allegations contained in Paragraph 80 relate to Count IV were dismissed, and therefore no responsive pleading is required. Dkt. 24.

81.    Under the doctrine of *respondeat superior*, AZ is liable for the discriminatory and retaliatory actions of its employees, officers, and/or agents.

**RESPONSE:** The allegations contained in Paragraph 81 relate to Count IV, which was dismissed, and therefore no responsive pleading is required. Dkt. 24.

82.    As a result of this conduct, Plaintiff has suffered damages in an amount to be proven at trial.

**RESPONSE:** The allegations contained in Paragraph 82 relate to Count IV were dismissed, and therefore no responsive pleading is required. Dkt. 24.

83.    As a direct and proximate result of Defendant's negligent infliction of emotional distress, Plaintiff had to secure the services of an attorney to pursue this action and is entitled to recover her reasonable attorneys' fees and costs.

**RESPONSE:** The allegations contained in Paragraph 83 relate to Count IV were dismissed, and therefore no responsive pleading is required. Dkt. 24.

## DEMAND FOR TRIAL BY JURY

AstraZeneca admits Plaintiff demands a trial by jury, but denies her claims are eligible for a jury trial.

## PRAYER FOR RELIEF

AstraZeneca denies all of the allegations and assertions contained in Plaintiffs' "Prayer For Relief" Paragraph, including subparagraphs (A)-(H), and specifically denies that Plaintiffs are entitled to any relief whatsoever.

## GENERAL DENIAL

AstraZeneca denies each and every allegation contained in the Complaint that is not specifically admitted herein.

## DEFENSES

AstraZeneca asserts the following defenses without conceding that AstraZeneca bears the burden of proof as to any of them. AstraZeneca reserves the right to assert such additional defenses that may appear and prove applicable during the course of this litigation.

1.      Plaintiff's Complaint, in whole or in part, fails to state facts sufficient to state a claim upon which relief may be granted.

2.      Plaintiff's claims, in whole or in part, are barred by the applicable statutes of limitations.

3.      Plaintiff's claims are barred to the extent that Plaintiff failed to exhaust her internal and/or administrative remedies.

4.      Plaintiff's claims, in whole or in part, are barred by the doctrine of estoppel.

5.      Plaintiff's claims, in whole or in part, are barred because such claims have been waived, discharged, and/or abandoned.

6.      Plaintiff's claims, in whole or in part, are barred by the doctrine of laches.

7.      Plaintiff's claims, in whole or in part, are barred by her unclean hands and/or inequitable or wrongful conduct.

8.      Each and every action taken by AstraZeneca with regard to Plaintiff's employment, was based upon legitimate, non-discriminatory reasons.

9.      Plaintiff is not entitled, on the law or the facts, to any of the damages claimed.

10.     Damages sustained by Plaintiff, the existence of which are denied, were solely and proximately caused by her own negligent, reckless, or intentional conduct.

4873-0918-1415, v. 11

11.    To the extent that Plaintiff received any income from other employment or any other sources, such monies must be offset against any damages allegedly due to her from AstraZeneca, the existence of which are denied.

12.    Plaintiff's claims for damages, in whole or in part, are barred to the extent she failed to mitigate or minimize her damages, the existence of which are denied.

13.    Plaintiff's claims for damages are barred to the extent that they exceed the amounts recoverable, if any, by applicable law.

14.    Plaintiff's claims fail because any actions of AstraZeneca were at all times taken in compliance with and/or as required by the laws of the United States and/or of the states which regulate AstraZeneca (including the states of Delaware and Oklahoma) and taken in good faith and with reasonable grounds for believing that any alleged acts and omissions were not in violation of the law.

15.    To the extent any of AstraZeneca's alleged actions or omissions were unlawful, which AstraZeneca expressly denies, no such actions or omissions constitute a willful violation, but rather were done in good faith, based on a reasonable belief that any such actions or omissions was in conformity with the law, and in reliance on the law.

16.    If any damages have been sustained by Plaintiff, although Defendant denies that Plaintiff was subject to any damages due to its actions or inactions, AstraZeneca is entitled under the equitable doctrine of setoff and recoupment to offset all obligations of Plaintiff owed to AstraZeneca against any judgment that may be entered against Defendant.

17.    Plaintiff's claims may be barred, in whole or in part, by the after-acquired evidence doctrine.

4873-0918-1415, v. 11

18.     Plaintiff refused to engage in good faith in the interactive process with AstraZeneca.

19.     Plaintiff has not demonstrated that she is or was eligible for a reasonable accommodation.

21.     If Plaintiff is able to prove any discrimination occurred, which AstraZeneca denies, AstraZeneca reserves the right to present a mixed-motive defense.

22.     Plaintiff's claims grounded upon an alleged failure to accommodate are barred because any reasonable accommodation for Plaintiff would have imposed an undue hardship upon AstraZeneca.

23.     Any claims for punitive damages are inappropriate because all actions regarding Plaintiff were taken in good-faith efforts to comply with all applicable statutes and laws and for legitimate reasons, AstraZeneca did not act with an improper motive or reckless disregard of Plaintiff, and/or Plaintiff cannot prove a willful violation.  Further, an award of punitive damages would be an unconstitutional denial of AstraZeneca's rights to due process and/or equal protection under the Fifth and Fourteenth Amendments of the United States Constitution.

## **<u>RESERVATION OF RIGHTS</u>**

AstraZeneca reserves the right to amend its responses above and to assert additional defenses as established by the facts of the case through discovery and/or its continuing investigation.  AstraZeneca respectfully requests that the Complaint be dismissed in its entirety, with prejudice, and that the Court award AstraZeneca the cost of its defense, including reasonable attorneys' fees, and such other relief as the Court deems appropriate.

Dated:  September 23, 2024                     Respectfully submitted,

                                                                        */s/ Nick Merkley*

17

Nick Merkley, OBA #20284
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
(405) 235-5500
nmerkley@gablelaw.com

*/s/ Shawn D. Golden*
Shawn D. Golden, OBA #21431
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
(713) 890-5000
shawn.golden@morganlewis.com

Jocelyn R. Cuttino, *pro hac vice*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
(202) 739-3000
jocelyn.cuttino@morganlewis.com

Daniel A. Kadish, *pro hac vice*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
(212) 309-6000
daniel.kadish@morganlewis.com

*Attorneys for Defendant AstraZeneca*
*Pharmaceuticals LP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2024**,** a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to the following ECF Registrants:

John C. Burns (pro hac vice forthcoming)
BURNS LAW FIRM
P.O. Box 191250
St. Louis, MO 63119
(314) 329-5040
john@burns-law-firm.com

Robert Newark, III
Attorney at Law
2575 Kelley Pointe Pkwy, Ste. 100
Edmond, OK 73013
P:(866) 230-7236
F:(888) 316-3398
robert@newarkfirm.com

***Attorneys for Plaintiff***
***Jamie Akers***

/s/ Nicholas V. Merkley
Nicholas ("Nick") V. Merkley